UNITED STATES DISTRICT COURT

OF WESTERN NEW YORK

68 COURT STREET

BUFFALO, NEW YORK

06 CV 0813

WRIT OF HABEAS CORPUS

December 11th 2006

**HARDIP GILL**

          Petitioner

vs.

JOHN J. INGHAM

FRANCES HENRY

BCIS

HOMELAND SECURITY

          Respondent.

2006 DEC 11 PM 3:35
FILED
U.S. DISTRICT COURT
WDNY BUFFALO

PETITIONER'S MEMORANDUM
OF LAW IN SSUPPORT OF
APPEAL OF BIA DECISION DATED November 13th 2006.

**DECISION OF BIA:**

**U.S. Department of Justice**

**Decision of the Board of Immigration** Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A72 434 733 - Buffalo                              Date:        NQY * ' 2006

In re: HARDIP GILL a.k.a Hardip Singh GUI a.k.a. Hardip S. Gill

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Prose

ON BEHALF OF DHS:          Carla J. Hengerer
        Deputy Chief Counsel                                  ~    n∧nnннн a ∗ннн

CHARGE:

Order:   Sec.   241(a)(l)(B), I&N Act [8U.S.C. §
1251(a)(1)(B)] -Entered without inspection

APPLICATION: Asylum; withholding of deportation; relief under the Convention Against
Torture

This matter was before the Board on August 31, 1998, when we dismissed the
respondent's appeal from an Immigration Judge's decision denying his application for asylum
and withholding of deportation. The respondent filed a petition for habeas corpus in the United
States District Court for the Western District of New York (the Court). On January 25, 2001,
the Court remanded the case to us for further proceedings. By an April 1,2003, order, we
found that the respondent was credible. We also resolved in the respondent's favor several of
the specific issues identified by the Court, and we remanded the case to the Immigration
Court for further proceedings. By an August 5, 2005, order, the Immigration Judge denied
the respondent's application for asylum, withholding of deportation, and relief under the
Convention Against Torture (CAT), and the respondent again appealed. The respondent's
appeal will be dismissed.

We adopt and affirm the August 5, 2005, decision of the Immigration Judge denying
the respondent's application for asylum, withholding of deportation, and relief under the
CAT. *See Matter ofBurbano,* 20 I&N Dec. 872, 874 (BIA 1994) (noting that adoption or
affirmance of a decision of an Immigration Judge, in whole or in part, is "simply a
statement that the Board's conclusions upon review of the record coincide with those which
the Immigration Judge articulated in his or her decision"). Assuming the respondent's
credibility, as well as that he demonstrated past persecution on account of his Sikh religion and
political opinion prior to coming to the United States in December 1991, the Department of
Homeland Security (DHS) has submitted adequate evidence of changed country conditions
(Exhs. RI A-C). As such, the DHS has rebutted the presumption of a well-founded fear of
future harm on account of a protected ground. 8 C.F.R. § 1208.13(b)(l). Likewise, the
severity of any persecution which the respondent may have endured prior to 1991 does not rise
to a level warranting a grant of asylum based on such past persecution alone. *See Matter
ofChen,* 20 I&N Dec. 16 (BIA 1989). As the record fully supports the result of the
Immigration Judge's decision, we affirm the conclusion that the respondent failed to
demonstrate

## INTRODUCTION

Petitioner, Hardip Gill, respectfully submits this memorandum of law in opposition to the BIA decision to find him deportable. This is the same court which found him deportable which was appealed to the federal court. (See attached Federal decision)

PROCEDURAL POSTURE: 1. This case was before the BIA on August 31, 1998, when the BIA dismissed the respondents Appeal from the Immigrations Judge decision denying Mr. Gill's application for asylum and withholding of deportation. The respondent filed a petition for habeas Corpus in the United States district Court for the Western District of New York. On January 25th 2001, the Federal court remanded the case to the Immigration court for further proceedings.

By an April 1st 2003 order, the respondent was found credible by the BIA. We (the BIA) also resolved in the respondents favor several of the specific issues identified by the Federal Court. By an August 5th 2005 order, the same Judge again denied the petitioners application for asylum, in spite of the fact that the BIA and the federal court found the petitioner credible and the evidence credible. In an application for asylum the applicant must give credible evidence that he or she has a reasonable fear of persecution if he or she is returned to their homeland. Mr. Gill proved this before the BIA and proved this before the Federal Court. He should have been issued his resident alien card upon this proof.

The critical part of the Immigration's (new ) argument is that conditions have changed in India and that Mr. Gill does not have to fear for his life. (See above discussion in decision). This argument is false and misleading. (Exhs RIA –C) See matter of Chen, 20 I&N Dec 16 (BIA 1989).The immigration has submitted evidence before the BIA that according to their studies, the conditions have changed in India. This may be true. The Immigration did not submit evidence stating that the specific conditions affecting Mr. Gill

him. He did not give general  testimony about the conditions all around India. Therefore,
the information submitted by the Immigration  is useless  and  non-responsive. I f matter of
Chen,  allows the Immigration to  submit general unresponsive  information showing
changed country conditions, this case   should not be followed because , applicants are not
allowed to submit general information of  torture. Applicants must give specific information
alleging specific incidents of torture.  Based on these    arguments,  Mr. Gill is therefore
requesting the Federal court  to   issue an order stopping the  deportation and  granting the
status  requested. Remanding the case  would only prolong this case which has been  in the
courts for the past  9 years.

      The  Immigration Judge decision in this matter was arbitrary, capricious and  against
the weight of the evidence.  This case was appealed again  and the BIA is now finding  Mr.
Gill  is  deportable again.

      Petitioner, Hardip Gill, is a citizen and native of India. The petitioner brought a
habeas corpus proceeding against respondent John J. Ingham (respondent), as the district
director of the United States Immigration and Naturalization Service (INS). In the above
referenced proceeding, Gill sought to enjoin his deportation and to reverse INS's
determination that he is subject to deportation. Respondent has moved to dismiss the
proceeding on the grounds that the United States District Court in the Western District of
New York has no subject matter jurisdiction. The Court denied respondent's motion and it
was so ordered. We are asking that the    retain jurisdiction of this matter.

### FACTS

It is undisputed that Hardip Gill entered the United States without inspection or admission by
the INS. After Hardip Gill entered the United States he filed an application for asylum on
January 20, 1992. If Hardip Gill returns to India he will face imminent persecution. Hardip

Gill fears that this prosecution may lead to him being killed. Hardip Gill faces this prosecution because of his religion and membership in a political group. Hardip Gill and his family practice the Sikh religion and are members of the Khalidal separatist party. This party advocates the establishment of a separate government in the Punjab region. Hardip Gill's father was a mayor of the village of Gill, India, and was assassinated in 1984 or 1985. Hardip Gill's father was assassinated due to his religion and his political belief. Hardip Gill fears that if he returns to India he will be assassinated just as his father was. While in India Hardip Gill was arrested, detained, and tortured on several different occasions due to his beliefs.

The immigration judge denied Hardip Gill's asylum application and ordered that he depart from the United States within 90 days. Hardip Gill filed an appeal because the judgment was against the weight of the evidence. The Board of Immigration Appeals (BIA) dismissed his appeal. Hardip Gill filed a habeas corpus petition, including a request for a preliminary injunction enjoining his deportation pending resolution of the matter. INS has moved to dismiss the petition on the grounds that the Court lacked subject matter jurisdiction. The critical part of the Immigration's argument is that conditions have changed in India and that Mr. Gill does not have to fear for his life.

## DISCUSSION A.

Subject Matter Jurisdiction

The respondent argues that this Court has no subject matter jurisdiction in this matter, however, this in not true. The Illegal Immigration Reform and Immigration Responsibility Act (IIRIRA) Pub. L. 104-208, 110 Stat. 3009.(1996) revised the scheme for judicial review of deportation orders. The prior law has differentiated between deportation and exclusion proceedings, however, the IIRIRA defined a new

administrative process known as "removal proceeding". Such proceeding is to apply to both aliens already admitted and to those not admitted to the United States. 8 U.S.C. Sec. 1229a(e)(2). The IIRIRA judicial review provisions depend on the dates when a removal proceeding was begun, and when a removal order became final.  Judicial review of an order that become final before  a removal proceeding commenced after April 1, 1997 is affected and is subject  to review in the Courts of Appeals, 8 U.S.C. sec. 1252. IIRIRA sec. 309(c)(l). Proceeding that fall in between those dates are subject to a group of transitional rules. IIRIRA sec. 309 (C)(2) and (4). Hardip Gill's deportation hearing began in March 1996 and his deportation order became final no earlier than August 31,1998, he is thus  covered under the transitional rules.

The transitional rule that applies to Hardip Gill's case is the rule that repeals former 8 U.S.C. sec. 1005a(b), which had authorized district court review of final deportation orders. IIRIRA sec. 300  this, the Court noted in its decision that it cannot base its subject matter jurisdiction on the Immigration Act. Although the Court cannot base its subject matter jurisdiction on the provisions of the Immigration Act, it does have a basis for jurisdiction

Although the Court cannot base its subject matter jurisdiction on the provisions of the Immigration Act, it does have a basis for jurisdiction under 28 U.S.C. §2241. In amending the Immigration act, Congress did not explicitly provide that immigration cases are excluded from jurisdiction under that statute. Thus the appropriate disposition of the petition for a writ of habeas corpus is that it be granted. The court states that repeal of jurisdiction, especially habeas jurisdiction, must be explicit and the amendments to the Immigration Act did not explicitly repeal §2241 jurisdiction. Due to this, the court found

that its jurisdiction under 28 U.S.C. §2241 does comprise deportation cases. This is particular to cases where the petitioner presents a cognizable claim under §2241, which is indeed the case here.

B. Gill Has Indeed Stated A Claim Upon Which Relief Can Be Granted INS has argued that §2241 jurisdiction can only be asserted over Constitutional claims, however the language of this section does not contain language limiting such claims. Gill is entitled to asylum status because if he is returned to India he will be persecuted and may be killed due to his political beliefs. If returned to his country, Gill will be subject to unlawful and arbitrary restraint of his liberty and will face death. INS misinterpreted the statutory criteria for political asylum and Gill should not be returned to India because he does have a cognizable claim and is entitled to asylum status. Gill was detained by police in India and was in fact beaten while in their custody because of his political beliefs. Further, his father was killed because of his political beliefs and by returning to India, Gill's life may end the same way his father's did, for the same reasons. Although the respondent argues that there are inconsistencies with Gill's statements, it does not find nor state that the imperative elements of Gill's claim were not credible. Despite any inconsistencies that may be found in Gill's claim, it is a fact that he has a well founded fear of imminent death and irreparable harm. The number of times he was taken into custody or beaten is not essential, rather the fact that he was taken into custody and beaten is essential along with the reason for such action, namely due to his political beliefs. This is true with his father's assassination. Whether the police killed him or the fundamentalists killed him is not essential, however the reason he was killed is

Thus, the court should hold for Gill. The respondent mentions INS v. Elias-Zacarias in his argument. The Court in that case stated that the BIA's determination can be reversed if the evidence presented by the victim, (in our case, Gill), was such that a reasonable fact finder would conclude that the required fear of persecution existed. INS v. Elias-Zacarias, quoting NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939). Here again, it is reasonable to believe that Gill has a well-founded fear of persecution and a reasonable fact finder would conclude that such fear does exist in this case.

An applicant meets the burden of proof of a well-founded fear if he shows that there is a "reasonable possibility" that he will be persecuted on account of his political opinion or belief. The standard however is not a "more likely than not" standard but rather is a "reasonable possibility" one. INS v. Cardozo-Fonseca, 480 U.S. 421 (9th Cir. 1987). Of course, the "reasonable possibility" standard is a lesser one that the "more likely than not" standard. Gill does meet this standard in showing through his statements that there is a reasonable possibility that he will be persecuted due to his political belief. For this reason again, the court should hold for Gill. Although the respondent argues that Gill is not credible due to his inconsistent statements, this cannot be assumed. To assume such would be taking a risk of holding against a petitioner who has the required elements needed for this claim. Gill's inconsistencies were not so major as to find him not credible. The number of times one is taken into detention or the extent to which a person is harmed is not so essential as to find a person not credible. The fact of the matter still remains that Gill was detained, he was harmed, and his father was murdered.

CONCLUSION:

This case was heard in the Immigration court in Buffalo. The judge in this case heard the evidence and held against the petitioner. The case was appealed to the Federal Court in Buffalo. The Federal Court held for the petitioner and remanded the case to the Immigration Court. The BIA resolved the issues in favor of the applicant Mr. Gill.. At this point the Immigration should have granted inerim permanent status for Mr. Gill. The Immigration Court failed to do this. The BIA is now arguing the following. After eight years of litigation, even if Mr. Gill gave credible evidence, even if Mr. Gill was believable, even if the BIA resolved the issues in favor of Mr. Gill. He should be denied. The new basis for denying the case is that conditions have changed. As argued before this reasoning is not based on logic, the conditions which have changed are not specific to Mr. Gills Case and should be ignored. The practice of issuing state department reports done by research teams using general data is useless, non specific and not relevant. We are respectfully asking the Federal Court to rule on this matter in a final decision.. The Board of Immigration appeals accepted the evidence of the Immigration that the conditions In India has changed and therefore Mr. Gill need not fear for his life upon return to India. As stated before, this argument is illogical and incorrect. The fact that conditions has changed generally in India is not specific to Mr. Gills case. The Immigration has not produced any evidence that stated that the specific situations addressed in Mr. Gill's asylums case has changed. The BIA wrongly accepted this evidence and we are respectfully requesting that the BIA Decision (see attached) be reversed.

Hardip Gill

Petitioner appearing Pro Se

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Gill

                           Plaintiff(s)

       v.                                         1:99-cv-00095

Ingham

                           Defendant(s)

---

PLEASE take notice of the entry of an ORDER filed on
1/25/01, of which the within is a copy, and entered 1/25/01
upon the official docket in this case.  (Document No. 19 .)


Dated:   Buffalo, New York
          January 25, 2001



                                      RODNEY C. EARLY, Clerk
                                      U.S. District Court
                                      Western District of New York
                                      304 U.S. Courthouse
                                        68 Court Street
                                        Buffalo, New York 14202

Enclosure
TO:
        Mackson Plato McDowall, Esq.
        James W. Grable, Esq.

FILED
U.S. DISTRICT COURT
W.D.N.Y. BUFFALO

2001 JAN 25  PM 1: 38

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF NEW YORK

HARDIP GILL,

Plaintiff(s),

99-CV-95S

V.

JOHN J. INGHAM, District Director,
United States Immigration and Naturalization Service,

Defendant(s).

D E C I S I O N
AND
O R D E R

WILLIAM M. SKRETNY
DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HARDIP GILL,

                         Petitioner

v.                                              **DECISION AND ORDER**
                                                99-CV-95S

JOHN J. INGHAM, District Director, United
States Immigration and Naturalization Service,

                         Respondent

## INTRODUCTION

Petitioner Hardip Gill, a citizen and native of India, brings this habeas corpus proceeding against Respondent John J. Ingham, as District Director of the United States Immigration and Naturalization Service ("INS"), challenging INS' determination that he is subject to deportation. In a prior Decision, this Court denied Respondent's Motion to Dismiss this proceeding for lack of subject matter jurisdiction. (Item no. 7.) This Court also has declined to issue a preliminary injunction enjoining Gill's deportation, based on the assertion of Respondent's counsel that INS will not deport Gill pending the outcome of this proceeding. (*Id.*, at 3, 24.)

Respondent has filed a second Motion to Dismiss, which requests that this Court reconsider its holding on subject matter jurisdiction in its prior Decision and asserts that Gill has failed to state a claim upon which relief may be granted. (Item no. 12.) Gill filed an answering Memorandum of Law (Item no. 17) and Respondent filed a Reply. (Item no. 18.)

Now, upon the parties' submissions and on consideration of the issues presented and applicable law, Respondent's motion is granted in part and denied in part, and this matter is remanded to INS for the following reasons.[1]

## BACKGROUND

This Court's prior Decision set forth the essential facts bearing on Gill's Petition. (Item no. 7, at 1-3.) Since that Decision was rendered, INS has submitted a complete Administrative Record ("AR"), which enables this Court to present a somewhat more detailed rendering of the underlying facts and procedural history.

Gill was born was born in India in 1962, and is a citizen of that country. (AR201.) On January 13, 1994, INS issued an order to Show Cause charging that Gill was subject to deportation because he entered the United States without inspection. (AR233.) At his deportation hearing, Gill stated that he entered the United States in December, 1991, and admitted that he entered this country without inspection or permission. (AR63-64.) Therefore, Gill did not contest his deportability, but rather requested asylum as a refugee. (AR66-67.)[2]

---

[1] Submissions include the Petition (Item no. 1), Respondent's first Motion to Dismiss and Memorandum of Law (Items no. 2 and 3), Petitioner's Memorandum of Law in Opposition to the Motion to Dismiss (Item no. 5), Respondent's Reply (Item no. 6), Respondent's second Motion to Dismiss and Memorandum of Law (Items no. 12 and 13), Petitioner's Memorandum of Law in Opposition to the Motion to Dismiss (Item no. 17), and Respondent's Reply. (Item no. 18.)

[2] Gill's hearing was initially commenced on August 18, 1994, but was adjourned three times, to enable Gill to seek legal representation. (AR27, 37-40, 46-47, 49, 56.) At the time of the third adjournment, the IJ stated that the case would re-commence in April, 1995 (AR56); however, the transcript of the re-commenced hearing is undated. (AR58-80.) It was at the undated hearing that Gill requested asylum, and the IJ granted one more adjournment, to enable Gill to apply for asylum. (AR66-71.) The hearing on Gill's asylum request was held March 25, 1996. (AR81-159.)

2

Following an adjournment, during which Gill submitted a formal application for asylum to INS, the hearing resumed on March 25, 1996, to consider Gill's eligibility for asylum status. (AR70-71, 82.) Gill testified that he sought asylum because he feared persecution because of his religion and political beliefs. He stated that he practices the Sikh religion and is a supporter of Akali Dal, a political movement which advocates the creation of a separate Sikh homeland independent of India. (AR104-8.)

Gill testified that he had been arrested three times and was beaten by police while in custody because of his religion and his support of Akali Dal. (AR93-97.) Gill also testified that his father, who had been mayor of the village in India where his family lived, was killed in 1985 because of his affiliation with Akali Dal. (AR91-92.)

The Immigration Judge ("IJ") found Gill to be deportable based on his admission that he entered the country without inspection. (AR18.)  Addressing Gill's asylum application, the IJ held:

> there is no persuasive evidence on the record that the authorities sought
> to punish [Gill] on account of one of the grounds enumerated in the
> statute.  While [Gill] and family members may have been the victims of
> ethnic violence and/or police brutality, which the Court certainly does not
> condone, the evidence fails to demonstrate that the authorities were
> concerned with anything other than [Gill's] involvement in criminal and
> other illegal activities.  Prosecution for illegal activities is a legitimate
> government act and not persecution as contemplated by the statute.

(AR22-23.) References to arrests and to "police brutality" suggest that the IJ credited Gill's assertion that he was arrested and beaten.  However, the IJ held that the arrests and beating were not persecution within the meaning of the asylum statute, but simple instances of non-discriminatory abuse, in the case of the beating, and police efforts to establish order in the case of the arrests.

3

The IJ also held,

[w]ith regard to the father's unfortunate death, there is insufficient
evidence in the record to support a finding that his death was tied to a
statutorily protected ground.  Dangers flowing from or coincidental to
ethnic confrontation and general complaints of harassment, mistreatment
or discrimination by one ethnic group against another standing alone are
insufficient to establish a claim of asylum.

(AR23.) The IJ apparently credited Gill's assertion that his father was assassinated

because of his political affiliation, but held that this was not a basis for asylum since

the murderers were private citizens on a vendetta, not government agents.

Gill appealed the decision to the Board of Immigration Appeals ("BIA"), stating:

I do not feel I have had a fair judgment.  The judge said go back home
(India).  If I go home I will be persecuted and or killed.  Since I have been
away from India for so long I have lost all my family and friends.  I feel
that America is my country now and I should be allowed to stay without
the fear that I will be killed or [harassed].

(AR11.) INS filed a Memo opposing Gill's appeal, and requesting "that the appeal be

dismissed for the reasons set forth in the decision of the [IJ]." (AR4.)

On August 31, 1998, BIA dismissed the appeal. (AR2.) It held that:

[t]he record contains significant discrepancies that relate to the substance
of [Gill]'s asylum claim and raise doubts regarding [his] credibility.  The
record reflects that [Gill's] testimony was not internally consistent or
consistent with his asylum application.

(*Id.*) (Internal case citations omitted.)[3]  The Decision stated that Gill "initially indicated

that he was arrested three times; later he stated he was arrested and detained four

times." (*Id.*) It contrasted Gill's testimony that he was detained once for three months

with his asylum application which did not mention a three month detention. (Id.) It also

---

[3] Quotations from the BIA decision do not include the BIA's internal citations to the IJ
hearing record and to Gill's asylum application.

4

found "discrepancies regarding the severity of the harm suffered by [Gill] during his detention," noting that Gill's asylum application stated that he had been beaten but "failed to mention that his arm was broken as a result of the beatings." (AR2-3.)

In addition to contradictions related to Gill's arrests, BIA noted that Gill stated in his asylum application that he was a member in the Akali Dal party, but testified that he was not a party member. (*Id.*) Finally, BIA found

> significant inconsistencies regarding the death of [Gill's] father, the mayor of Ghil. In his asylum application, [Gill] indicated that his father was killed by Hindu extremist[s] outside the control of the government. However, in his testimony [Gill] testified that his father was arrested, detained, and shot by the police. [Gill] did not explain this discrepancy.

(*Id.*)

BIA thus found that Gill's story was internally inconsistent with regard to five points: (1) the number of times Gill was arrested, (2) length of his confinement, (3) injuries suffered from beatings while in jail, (4) Gill's membership in Akali Dal, and (5) the identity of the individuals who murdered Gill's father. However, BIA did not render a finding as to the truth of two key components of Gill's story.

Although the BIA decision finds that Gill contradicted himself regarding the identity of his father's murderers, it does not make an explicit finding as to the truth of Gill's allegation that his father was assassinated because of his political affiliation.

Also, although the BIA decision finds that Gill contradicted himself regarding the number of times he was arrested, the length of his confinement, and the injuries he suffered while in jail, it does not explicitly hold that Gill lied about getting arrested, or

about getting beaten up while in jail. Nor does it rule on whether any such arrests or beatings were attributable to Gill's religion, ethnicity or political affiliation.

Neither Gill nor INS addressed the credibility issue in their submissions to BIA. There is no indication in the record that BIA identified Gill's credibility as an issue to be addressed on appeal or gave Gill an opportunity to explain the apparent inconsistencies in his story.

Gill filed the present Petition on February 8, 1999. (Item no. 1.) As mentioned in this Court's prior Decision, although "pled somewhat inartfully, the Petition can be read as asserting a claim that INS based its decision on an erroneous interpretation of the law applicable to asylum requests." (Item no. 7, at 19.) Specifically, Gill alleges that he would be "subjected to an unlawful ... restraint of [his] liberty by being deported to India," in that he "would ... face imminent death and persecution." if he returned to India. (Item no 1 ¶¶5, 6.)

INS moved to dismiss the Petition on the ground that the Court of Appeals has sole jurisdiction, and that any claim that Gill might have presented to the Court of Appeals is time barred. (Items no. 2, 3.) This Court denied the Motion to Dismiss on the ground that it has jurisdiction to determine Federal Constitutional and statutory claims under the general habeas statute, 28 U.S.C. §2241. (Item no. 7, at 15-16.)

On December 21, 1991, INS again moved to dismiss the Petition. It requests that this Court reconsider its prior ruling on the jurisdiction issue, and argues in the alternative that Gill has not pled a claim that is subject to this Court's §2241 jurisdiction. (Items no. 12, 13.)

6

## DISCUSSION

## I. THIS COURT'S HABEAS JURISDICTION UNDER 28 U.S.C. §2241

This Court's prior Decision was premised on two Second Circuit decisions which held that provisions in AEDPA and IIRIRA limiting jurisdiction did not affect district courts' habeas jurisdiction under §2241, *Jean-Baptiste v. Reno*, 144 F.3d 212, 219-20 (2nd Cir. 1998) and *Henderson v. I.N.S.*, 157 F.3d 106, 121-22 (2nd Cir. 1998). Respondents had argued that the Second Circuit cases were distinguishable from Gill's case, since the former cases involved statutes that purported to eliminate judicial review, and therefore implicated the Suspension Clause of the United States Constitution.[4] However, this Court held that the Second Circuit's holdings must be given a broader interpretation.

> Even though the Suspension Clause was directly implicated in *Jean-Baptiste* and *Henderson*, since the statutory provision reviewed in those cases purported to eliminate and not merely restrict habeas jurisdiction, the Second Circuit did not limit its holding to instances where aliens claimed they had no forum to challenge their deportation. It stressed that repeal of jurisdiction, particularly habeas jurisdiction, must be explicit, and that amendments to the Immigration Act did not explicitly repeal §2241 jurisdiction. Also, as a matter of statutory construction, there does not appear to be any basis for finding that Congress intended, by its silence, to preserve §2241 jurisdiction for criminal aliens and at the same time intended, by its silence, to eliminate §2241 jurisdiction for non-criminal aliens.

(Item no. 7, at 15.) Since neither AEDPA nor the transitional rules of IIRIRA explicitly restrict district courts' habeas jurisdiction under §2241, this Court held that it retains such jurisdiction over deportation cases. (*Id.*, at 13-15.)

---

[4] U.S.Const. Art. I, §9, cl. 2 provides: "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

Respondents urge this Court to reconsider its holding. The effect of jurisdictional provisions in the AEDPA and IIRIRA on §2241 habeas jurisdiction has been subject to much litigation, and at least some courts have held that the recent legislation restricts §2241 jurisdiction. Therefore, this Court has reconsidered its prior holding in light of recent case law, as requested by Respondent.

Upon reconsideration, this Court reiterates its prior holding: district courts retain jurisdiction under §2241 to review challenges to INS exclusion orders when those challenges are premised on Constitutional or Federal statutory claims; however, district courts have no §2241 jurisdiction to review claims of abuse of discretion, or lack of substantial evidence. This holding is based on recent Second Circuit case law, and on decisions in other circuits interpreting AEDPA and IIRIRA.

In *Calcano-Martinez v. INS*, 2000 WL 1336611 (2nd Cir. 2000), the Second Circuit construed the permanent rules of IIRIRA, holding that district courts "continue to have habeas jurisdiction under [§2241] over legal challenges to final removal orders." *Id.*, at *10. This holding derived from the Supreme Court's admonition that "repeals" of habeas jurisdiction "by implication are not favored." *Felker v. Turpin*, 518 U.S. 651, 660, 116 S.Ct. 2333, 2338, 135 L.Ed.2d 827 (1996), citing *Ex parte Yerger*, 8 Wall. 85, 19 L.Ed. 332 (1869). Noting that "*Felker* was decided three months before IIRIRA became law," the Second Circuit reasoned: "[h]ad Congress intended that the avenue of review available under [§2241] be repealed, it knew to use more explicit language than it chose." *Calcano-Martinez*, at *11. Therefore:

[b]ecause the permanent rules do not mention a repeal of [§ 2241] or habeas jurisdiction generally, we hold that they do not deprive a federal

8

court of its habeas jurisdiction under § 2241 to review the purely legal
claims of criminal aliens against final orders of removal.

*Id.*, at *17. In *Calcano-Martinez*, as in *Jean-Baptiste* and *Henderson*, the government's

interpretation would have left petitioners with no judicial recourse and thus potentially

implicated the Suspension Clause. However, as in the prior decisions, the Second

Circuit did not restrict its holding to cases implicating the Suspension Clause, and the

logic of its holding clearly applies to Gill's case. It stressed the continuity of its

reasoning in the three decisions, noting that "[n]othing in IIRIRA's permanent provision

requires us to stray from our determination, in *Jean-Baptiste* that habeas review

survives the IIRIRA." *Calcano-Martinez*, at *11. It also noted that:

> [o]ur decision in *Jean-Baptiste* is in accord with the majority of circuits
> also to hold that [the transitional rules] did not repeal habeas jurisdiction
> over immigration decisions. The First, Third, Fourth, Fifth, Sixth, Eighth,
> Ninth, Tenth, and Eleventh Circuit Courts of Appeals held that habeas
> jurisdiction to review final deportation decisions survived the AEDPA and
> IIRIRA transitional rules' streamline of the judicial review available under
> the INA.

*Id.*, at *6, citing the following: *Goncalves v. Reno*, 144 F.3d 110, 119-23 (1st

Cir.1998), cert. denied, 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999);

*Sandoval v. Reno*, 166 F.3d 225, 236-37 (3d Cir.1999); *Bowrin v. INS*, 194 F.3d

483, 489 (4th Cir.1999); *Requena-Rodriquez v. Pasquarell*, 190 F.3d 299, 306 (5th

Cir.1999); *Pak v. Reno*, 196 F.3d 666, 673 (6th Cir.1999); *Shah v. Reno*, 184 F.3d

719, 723-24 (8th Cir.1999); *Magana-Pizano v. INS*, 200 F.3d 603, 609 (9th

Cir.1999); *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1145-46 (10th Cir.1999),

cert. denied, --- U.S. ----, 120 S.Ct. 1539, 146 L.Ed.2d 352 (2000); *Mayers v. INS*,

175 F.3d 1289, 1301 (11th Cir.1999).

The Seventh Circuit reached a contrary conclusion in *LaGuerre v. Reno*, 164

F.3d 1035, 1040 (7th Cir.1998), cert. denied, --- U.S. ----, 120 S.Ct. 1157, 145

L.Ed.2d 1069 (2000) (cited in *Calcano-Martinez*, at *6.) However, the Second

Circuit's holding in *Jean-Baptiste* clearly represents the majority view in the circuits.

Respondent cites *Hose v. INS*, 180 F.3d 992, 995 (9th Cir. 1999) which held

that "IIRIRA's transitional rules vest exclusive jurisdiction over petitions for review of

exclusion orders in the courts of appeals, not the district courts." However, the Ninth

Circuit has since ruled that:

> *Hose* explicitly did not decide whether or not habeas review remained
> available in any context; it provides no authority for the proposition that
> such review does not exist.

*Flores-Miramontes v. INS*, 212 F.3d 1133, 1140 n. 9 (9th Cir. 2000). The Ninth Circuit

agreed that AEDPA and IIRIRA consolidated jurisdiction over petitions for "judicial

review" of INS decisions in the circuit courts. However, it reasoned that "'judicial

review' and 'habeas corpus' have important and distinct technical meanings in the

immigration context." *Flores-Miramontes*, at 1140, citing *Sandoval*, 166 F.3d at 235.

"Judicial review" in this context refers to quasi-appellate review of agency actions, as

in Administrative Procedure Act cases. However, habeas corpus functions as a direct

challenge to a respondent's authority to hold a petitioner in custody and, as such,

derives from the historic Writ. *Flores-Moramontes*, at 1140.

Citing *Felker*, the Ninth Circuit held that Congress had not explicitly revoked

§2241 habeas jurisdiction in deportation cases, and therefore district courts retained

such jurisdiction. *Flores-Miramontes*, at 1138-41. Thus the holding in *Hose*, as clarified

10

in *Flores-Miramontes* is not appreciably different from the Second Circuit's holdings in *Jean-Baptiste, Henderson* and *Calcano-Martinez*.[5]

The Second Circuit has made clear its adherence to the principle that repeal by implication of habeas jurisdictional statues is disfavored, and that any such repeal should explicitly refer to the jurisdictional statute that it purports to affect. This principle is grounded in Supreme Court doctrine, as recently reiterated in *Felker v. Turpin*, and is consistent with the approach adopted by most, albeit nor all, circuit courts. Under this approach, it is clear that neither AEDPA, nor the transitional rules of IIRIRA restrict this Court's habeas jurisdiction under §2241.

## II. GILL'S STATUTORY CLAIM

The distinction between judicial review and habeas corpus impacts the scope of this Court's jurisdiction. §2241 is not a basis for review of substantial evidence or abuse of discretion claims. *Henderson*, at 120 n. 10. However, "legal statutory and constitutional claims are within §2241's scope." *Calcano-Martinez*, at *16. *See*, also, *Henderson*, 157 F.3d at 120-21 and n. 11.

As this Court found in its prior Decision, Gill's Petition "can be read as asserting a claim that INS based its decision on an erroneous interpretation of the law applicable to asylum requests." (Item no. 7, at 19.) The prior Decision noted that "BIA ... did not

---

[5] *Mello v. INS*, 1999 WL 959354 (S.D.N.Y. 1999), cited by Respondents, held that IIRIRA vests exclusive jurisdiction over "judicial review" of exclusion orders in the courts of appeals. This holding is consistent with the distinction between habeas and "judicial" review, discussed in *Flores-Miramontes* and in the Second Circuit decisions. To the extent that *Mello* or other district court decisions cited in Respondents' brief can be read as holding that IIRIRA restricts §2241 jurisdiction, this Court respectfully disagrees, based on the reasoning set forth in the above text.

enunciate its interpretation of the statutory criteria for asylum in its decision on Gill's

appeal." (*Id.*, at 21) However, it identified implicit criteria underlying two sets of

findings in the BIA decision.

The first set of findings related to Gill's claim that his father was murdered.

> BIA notes that Gill stated in his asylum application that his father was
> killed by Hindu extremists, but in testimony claimed that police killed his
> father. However, the decision does not state whether the BIA believed or
> disbelieved Gill's claim that his father was murdered, or that the murder
> was due to Gill's father's political activities....
>
> [I]f Gill's father was murdered by Hindu extremists rather than
> government agents, that fact would not invalidate his asylum claim, so
> long as the murder was prompted by his father's political views and the
> government was unable or unwilling to prevent it.

(*Id.*, at 21-22.) The second set of findings related to Gill's claim that he was arrested

and beaten because of his religion and political beliefs.

> The [BIA] decision also cites discrepancies regarding the number of times
> Gill was detained by police and the duration of such detentions, and
> notes that Gill stated in his application that he was beaten while in
> custody, but failed to mention that his arm had been broken as a result
> of those beatings. However, the BIA refrains from stating whether it
> finds Gill's basic assertion - that he was detained by police and beaten
> while in custody - credible....
>
> [T]he fact that Gill was detained by police and beaten while in custody
> could provide a good faith basis for Gill's belief that he will be prosecuted
> if he returns to India regardless of whether police broke Gill's arm when
> they beat him, or whether he was detained two or three times....

(*Id.*, at 21-22.) The prior Decision therefore concluded:

> [i]t may be that the BIA found Gill's story to be entirely fictional and that
> he had no basis for an asylum claim. However, that is not what its
> decision says. Indeed, the decision avoids an explicit ruling on [ ] factual
> allegations critical to Gill's asylum claim.

(*Id.*, at 23.)

12

A review of the Administrative Record confirms this Court's analysis. The record does not include determinations with regard to the following questions.

(1) Does BIA credit Gill's allegation that his father was murdered?

(2) If so, does BIA credit Gill's allegation that his father was killed because of his political beliefs?

(3) If BIA finds that Gill's father was killed because of his political beliefs, does it also find that the murder was committed by government agents or by vigilantes who operated with the implicit approval of, or out of control of the government?

(4) Does BIA credit Gill's allegation that he was arrested and was beaten while in jail?

(5) If so, does BIA credit Gill's allegation that the arrest(s) and/or beating were because of Gill's religion or political affiliation?

Without an answer to these questions, it is impossible to rule on Gill's claim that INS misapplied the statutory criteria for granting asylum since this Court cannot determine whether the agency "undert[ook] the specific inquiry required by" the asylum standard. *Brice v. U.S. Department of Justice*, 806 F.2d 415, 418 (2nd Cir. 1986).

This Court cannot presume that, since BIA found inconsistencies in certain aspects of Gill's story, it rejected his story *in toto*. *Abankwah v. INS*, 185 F.3d 18, 23 (2nd Cir. 1999) (BIA's "rejection of ... one aspect of Abankwah's asylum claim" did not equate to a finding that her story, as a whole, was false.) It is up to INS to clearly set forth its rationale in deciding an asylum request and this Court will not guess at that rationale.

13

It must be stressed that this ruling does not purport to decide whether BIA's findings of fact are supported by substantial evidence. This Court simply concludes that it cannot render a reasoned decision on Gill's statutory claim - that BIA misinterpreted the asylum statute - until BIA renders findings on the five issues defined above. Once those findings are rendered, this Court's scrutiny will be limited to a determination of whether BIA properly applied the statutory asylum standard.

In reviewing Gill's case, BIA is, of course, not restricted to addressing the five issues identified in this Decision. For example, the prior BIA decision did not address the question of whether conditions in India "have changed to such an extent that [Gill] no longer has a well-founded fear of being persecuted if he ... were to return." 8 C.F.R. §280.13(b)(1)(i). The exhibits submitted to the IJ suggest that the human rights situation in India, and particularly the status of Sikhs in Gill's home state has improved significantly since Gill left the country. (AR161-63.) Nothing in this Court's Decision or Order precludes BIA from addressing the "changed conditions" issue.

BIA may want to consider one procedural point in its deliberations. The Ninth Circuit has held:

> [w]hen the BIA decides an asylum case "based on an independent, adverse, credibility determination, contrary to that reached by the IJ, it must give the petitioner an opportunity to explain any alleged inconsistencies that it raises for the first time."

*Abovian v. INS*, 2000 WL 1509971, at *4 (9th Cir 2000) quoting *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999). In *Abovian*, the IJ did not make a specific finding as to the applicant's credibility. The Ninth Circuit reasoned that:

14

[t]he IJ's decision therefore did not put the Abovians on notice that their credibility was questioned or that they should provide the BIA with explanations for alleged discrepancies in their testimony. As a result, the BIA violated the Abovians' rights to due process.

*Abovian, Id.*, citing, *inter alia, Campos-Sanchez*, 164 F.3d at 449)

The facts in *Abovian* appear to parallel Gill's case. The IJ held that Gill's factual allegations did not support a request for asylum. (AR 19-23.) The IJ did not rule on the credibility of Gill's story, and nothing in the IJ's decision suggests that credibility was an issue that needed be addressed in an appeal. Neither Gill nor INS, in their submissions to BIA addressed the credibility issue, and there is no indication that BIA ever alerted Gill that it would decide the appeal based on this issue.

This Court has not found any precedent in the Second Circuit or other circuits that either adopt or reject the Ninth Circuit's holdings in *Abovian* and *Campos-Sanchez*. Given this Court's holding that further BIA fact-finding is required before this Court can address Gill's statutory claim, there is no need to rule on the due process issue, and this Court does not require that BIA take any particular procedural steps. The Ninth Circuit decisions are discussed in order to alert BIA to a possible issue that the agency may want to avoid.

## CONCLUSION

For the reasons set forth herein, Respondents' Motion to Dismiss this Proceeding is GRANTED in part and DENIED in part, in that this matter is remanded to the Bureau of Immigration Appeals of the United States Department of Justice for further fact-finding.

## ORDER

IT HEREBY IS ORDERED that Respondent's Motion to Dismiss this Proceeding is GRANTED in part and DENIED in part.

FURTHER, this matter is remanded to the Bureau of Immigration Appeals of the United States Department of Justice for further fact-finding. Specifically, the Bureau of Immigration Appeals must render findings with regard to the following issues.

(1) Does BIA credit Gill's allegation that his father was assassinated?

(2) If so, does BIA credit Gill's allegation that his father was killed because of his political beliefs?

(3) If BIA finds that Gill's father was killed because of his political beliefs, does it also find that the murder was committed by government agents or by vigilantes who operated with the implicit approval of, or out of control of the government?

(4) Does BIA credit Gill's allegation that he was arrested and was beaten while in jail?

16

(5) If so, does BIA credit Gill's allegation that the arrest(s) and/or beating were because of Gill's religion or political affiliation?


SO ORDERED


Dated:    January **24**, 2001
          Buffalo, New York

WILLIAM M. SKRETNY
United States District Judge

17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Gill

                              Plaintiff(s)

        v.                                      1:99-cv-00095

Ingham

                              Defendant(s)

---

PLEASE take notice of the entry of a JUDGMENT filed on

1/26/01, of which the within is a copy, and entered 1/26/01

upon the official docket in this case.  (Document No. 20 .)


Dated:   Buffalo, New York
         January 26, 2001




                          RODNEY C. EARLY, Clerk
                          U.S. District Court
                          Western District of New York
                          304 U.S. Courthouse
                          68 Court Street
                          Buffalo, New York 14202

Enclosure
TO:
         Mackson Plato McDowall, Esq.
         James W. Grable, Esq.

# United States District Court

## WESTERN DISTRICT OF NEW YORK

HARDIP GILL

**JUDGMENT IN A CIVIL CASE**

V.

CASE NUMBER: 99-CV-95

JOHN J. INGHAM,
DISTRICT DIRECTOR
UNITED STATES IMMIGRATION AND NATURALIZATION

☐ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that respondents motion to dismiss the proceedings is granted in part and denied in part and the matter is remanded to the Bureau of Immigration Appeals of the United States Department of Justice for further fact-finding.

2001 JAN 26 PM 3: 48
U.S. DISTRICT COURT
W.D.N.Y. BUFFALO
FILED

Date: JANUARY 26, 2001

RODNEY C. EARLY, CLERK

By: JANE DENNIS
Deputy Clerk

Revised 05/01 WDNY
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Hardip  Gill
(Full name under which you were convicted)

                Petitioner,

v.

BCIS/AKA Homeland Security                    Civil No.: _____99-CV-95S_____
(Name of warden, superintendent, jailor or
authorized person having custody of petitioner)

                Respondent.

### PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
### BY A PERSON IN CUSTODY

Petitioner's Name (and Prisoner Number, if applicable): _____

Petitioner's Place of Confinement: _____

I.    Provide the following information regarding the determination which you are challenging
      in this petition.  (If you wish to challenge more than one determination, you  should file a
      separate petition for each determination.)

      * Type of determination: _____ Immigration   2241   See attached   Memorandum

      _____

      * Who made the determination: _____

      _____

      * Where was the determination made: _____

      * When was the determination made: _____

      * Did you appeal the determination?: Yes _____   No _____

      * If you **did** appeal:
            * To whom did you appeal: _____

            * When was the appeal decided: _____

            * What was the result of the appeal: _____

      _____

      * If you **did not** appeal, state why you did not: _____

      _____
      _____

2.    State **concisely** every ground on which you claim that you are being held unlawfully. Summarize **briefly** the **facts** supporting each ground:

(a)  Ground one: _____

_____

Supporting facts (tell your story briefly without citing cases or law): _____

_____

_____

_____
___

(b)    Ground two: _____

_____

Supporting facts (tell your story briefly without citing cases or law): _____

_____

_____

_____
___

(c)    Ground three: _____

_____
-

Supporting facts (tell your story briefly without citing cases or law): _____

_____

_____

_____
___

(d)    Ground four: _____

_____

Supporting facts (tell your story briefly without citing cases or law): _____

_____

_____

_____
___

3.    Have you filed any other habeas corpus applications with respect to this incarceration?
      YES _____ NO _____

If the answer is YES, please answer the following questions:

Approximate date of filing: _____
—
Court where petition filed: _____
—

Docket number of proceeding:_____

Name of judge assigned to proceeding:_____

Disposition:_____

**WHEREFORE**, the petitioner prays that the Court grant petitioner the relief to which he or she may be entitled in this proceeding.  (You may also list any specific relief you wish to obtain.)  _____

_____

_____

_____

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: _____        _____
                    (DATE)                        (SIGNATURE OF PETITIONER)

_____        _____
                                          (SIGNATURE OF ATTORNEY (IF ANY))



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

GILL, HARDIP
1028 SOUTH AVE, APT 12, FLR 3
NIAGARA FALLS, NY 14305-2653

Office of the District Counsel/BUF
130 Delaware Ave., Room 203
Buffalo, NY 14202

Name: GILL, HARDIP                                          A72-434-733

Date of this notice: 11/13/2006

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Acting Chief Clerk

Enclosure

Panel Members:
    GRANT, EDWARD R.

**U.S. Department of Justice**                                    Decision of the Board of Immigration Appeals

Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A72 434 733 - Buffalo                          Date:        **NOV 1 3 2006**

In re:  HARDIP GILL a.k.a Hardip Singh Gill a.k.a. Hardip S. Gill

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Pro se

ON BEHALF OF DHS:          Carla J. Hengerer
                           Deputy Chief Counsel

CHARGE:

     Order:   Sec.   241(a)(1)(B), I&N Act [8 U.S.C. § 1251(a)(1)(B)] -
                 Entered without inspection

APPLICATION:   Asylum; withholding of deportation; relief under the Convention Against Torture

This matter was before the Board on August 31, 1998, when we dismissed the respondent's appeal from an Immigration Judge's decision denying his application for asylum and withholding of deportation. The respondent filed a petition for habeas corpus in the United States District Court for the Western District of New York (the Court). On January 25, 2001, the Court remanded the case to us for further proceedings. By an April 1, 2003, order, we found that the respondent was credible. We also resolved in the respondent's favor several of the specific issues identified by the Court, and we remanded the case to the Immigration Court for further proceedings. By an August 5, 2005, order, the Immigration Judge denied the respondent's application for asylum, withholding of deportation, and relief under the Convention Against Torture (CAT), and the respondent again appealed. The respondent's appeal will be dismissed.

We adopt and affirm the August 5, 2005, decision of the Immigration Judge denying the respondent's application for asylum, withholding of deportation, and relief under the CAT. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994) (noting that adoption or affirmance of a decision of an Immigration Judge, in whole or in part, is "simply a statement that the Board's conclusions upon review of the record coincide with those which the Immigration Judge articulated in his or her decision"). Assuming the respondent's credibility, as well as that he demonstrated past persecution on account of his Sikh religion and political opinion prior to coming to the United States in December 1991, the Department of Homeland Security (DHS) has submitted adequate evidence of changed country conditions (Exhs. R1A-C). As such, the DHS has rebutted the presumption of a well-founded fear of future harm on account of a protected ground. 8 C.F.R. § 1208.13(b)(1). Likewise, the severity of any persecution which the respondent may have endured prior to 1991 does not rise to a level warranting a grant of asylum based on such past persecution alone. *See Matter of Chen*, 20 I&N Dec. 16 (BIA 1989). As the record fully supports the result of the Immigration Judge's decision, we affirm the conclusion that the respondent failed to demonstrate

A72 434 733

eligibility for asylum, withholding of deportation, or protection under the CAT (I.J. at 7-10). *See Singh v. BIA*, 435 F.3d 216 (2d Cir. 2006). In view of the foregoing, the following orders shall be entered.

ORDER:    The respondent's appeal is dismissed.

FURTHER ORDER:    Pursuant to the Immigration Judge's order and in accordance with our decision in *Matter of Chouliaris*, 16 I&N Dec. 168 (BIA 1977), the respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the DHS; and in the event of failure so to depart, the respondent shall be deported as provided in the Immigration Judge's order.

_____
FOR THE BOARD

CERTIFICATE OF SERVICE

I  Hardip    gill swear under the pains and penalties of perjury that  I  placed in the US MAIL

a copy of  the Habeas Corpus Motion   and mailed it  1st class mail  to 130 Delaware Ave

Suite 201 Litigation Department, Buffalo, New York  14202.

Hardip Gill